**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **AUSTIN FIREFIGHTERS RELIEF AND RETIREMENT FUND** | § § | |
| | § | |
| **v.** | § | **A-06-CA-327 LY** |
| | § | |
| **BROWN BOTTLING GROUP, INC.** | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO: THE HONORABLE LEE YEAKEL
UNITED STATES DISTRICT JUDGE

Before the Court are Defendant Brown Bottling Group, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction, Motion for Stay of Litigation, or, in the alternative, Motion to Transfer, filed on June 2, 2006 (Clerk's Docket No. 10); Plaintiff's Response, filed on June 23, 2006 (Clerk's Docket No. 13); and Defendant's Reply, filed on July 7, 2006 (Clerk's Docket No. 15).

On July 3, 2006, the District Court referred the above-Motion to Dismiss to the instant Magistrate Court for Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges. The Court conducted a hearing on September 6, 2006, during which the Court heard oral argument from counsel regarding the Motion to Dismiss.

## I. GENERAL BACKGROUND

Plaintiff Austin Firefighters Relief and Retirement Fund ("Plaintiff" or "AFF") is a legislatively created retirement plan which administers pension benefits for members of the City of Austin's Fire Department and has its sole office and principal place of business in Austin, Texas.

Defendant Brown Bottling Group, Inc. ("Defendant" or "BBG"), a Mississippi corporation with its principal place of business in Mississippi, is a bottling corporation which bottles and distributes Pepsi products in Mississippi.

It is undisputed that BBG and AFF had no relationship with each other until the accounting firm of KPMG, L.L.P. ("KPMG") contacted each Party separately to promote its new tax shelter scheme, known as the S-corporation Charitable Contribution Strategy ("SC2"). KPMG developed, promoted and sold this SC2 tax strategy to various tax clients and tax-exempt organizations, such as BBG and AFF. Under the SC2 tax strategy, S corporation shareholders would attempt to transfer the incidence of taxation on S corporation income by donating S corporation nonvoting stock to a tax exempt organization, while retaining the economic benefits associated with that stock. *See* IRS Notice 2004-30. After the donation of the nonvoting stock to the tax exempt party, the parties claim that the exempt party owns 90 percent of the stock of the S corporation and that any taxable income allocated on the nonvoting stock to the exempt party is not subject to tax on unrelated business income under the Tax Code. Pursuant to one or more agreements (typically redemption agreements) entered into as part of the transaction, the exempt party can require the S corporation or the original shareholders to purchase the exempt party's nonvoting stock for an amount equal to the fair market value of the stock as of the date the shares are presented for repurchase. *Id.*

After KPMG discussed the issue independently with each party, KPMG decided that the two Parties would be a good match to enter into a SC2 transaction. Accordingly, KPMG drew up a Redemption Agreement to finalize the SC2 tax agreement, which was presented to and signed by BBG and AFF separately at their respective business offices (at BBG's offices in Jackson, Mississippi, and at AFF's offices in Austin, Texas) on February 21, 2001. The Redemption

Agreement provided that BBG President William Brown[1] would donate his non-voting common stock (9,000 shares) to AFF and in return, AFF would have the right (after the Commencement date) to present all of the BBG stock for redemption, and upon such presentation, BBG would purchase the stock at the fair market value.

After the Parties signed the Redemption Agreement, the Internal Revenue Service ("IRS"), on April 1, 2004, issued a notice declaring the SC2 shelter at issue in the Redemption Agreement to be an abusive tax avoidance transaction and deemed such arrangements "listed transactions." IRS Notice 2004-30 (4/1/04). The IRS also declared that tax exempt parties in the transactions would be treated as *participants* in the transactions. *Id.*

After the IRS issued its notice, consistent with the Redemption Agreement, on February 9, 2005, AFF provided formal notice to BBG of its intent to redeem the BBG stock. On February 21, 2005, AFF presented the BBG stock for redemption. AFF contends that BBG has failed to honor the terms of the Agreement by failing to redeem and purchase the stock. BBG contends that the Redemption Agreement is void and unenforceable due to the IRS Notice issued in 2004 disallowing such tax strategies.

On April 18, 2006, BBG filed a declaratory judgment action against AFF in Mississippi state court, which was subsequently removed to federal court.[2] In that lawsuit, BBG seeks a declaration that the Redemption Agreement is void and thus unenforceable due to the IRS's decision in 2004

---

[1]Brown is the sole voting shareholder of BBG.

[2]On June 1, 2006, AFF removed the Mississippi state lawsuit to the United States District Court for the Southern District of Mississippi. *See* Cause No. 3:06-CV-797. In a mirror image of the instant case, AFF has filed a motion to dismiss for lack of personal jurisdiction in the Mississippi case, which is currently pending before United States District Judge Daniel Jordan III. The Mississippi case is currently stayed pending resolution of the motion to dismiss.

to disallow the tax benefits of the SC2 tax strategy. BBG's lawsuit further seeks the return of the 9,000 shares of non-voting common stock donated by BBG and currently held by AFF, seeks a permanent injunction against AFF's enforcement of the Redemption Agreement, and alleges estoppel and rescission.

Two weeks after the filing of the Mississippi lawsuit, on May 1, 2006, AFF filed the instant breach of contract lawsuit against BBG seeking damages and attorney's fees. Plaintiff alleges that BBG breached the terms of the Agreement by failing to redeem and purchase the BBG stock, as required by the Agreement. AFF relies on diversity of citizenship as the basis for this Court's jurisdiction.

On June 2, 2006, Defendant BBG filed the instant Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(2) on the basis that this Court lacks personal jurisdiction over BBG because BBG does not have sufficient minimum contacts with Texas to give rise to personal jurisdiction. Alternatively, BBG moves the Court to transfer the case to the Southern District of Mississippi pursuant to 28 U.S.C. § 1404(a) for the convenience of the parties and witnesses and in the interest of justice. BBG points out that the Southern District of Mississippi is the district in which its first-filed lawsuit against AFF is currently pending.

## II. ANALYSIS

### A. Standard of Review

The plaintiff bears the burden of demonstrating that the court enjoys personal jurisdiction over a nonresident defendant who has brought that jurisdiction into question. *Allred v. Moore & Peterson, P.C.*, 117 F.3d 278, 281 (5th Cir. 1997), *cert. denied*, 522 U.S. 1048 (1998). In resolving a jurisdictional issue, the Court may review pleadings, affidavits, interrogatories, depositions, oral

testimony, exhibits, and any part of the record. *Id*. When a district court, as here, does not conduct an evidentiary hearing, the party seeking to assert personal jurisdiction is required only to present sufficient facts to make out a *prima facie* case. *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 869 (5th Cir. 2000).[3] The Court will accept as true any uncontroverted allegations contained in the party's complaint and will resolve all factual conflicts arising out of the parties' affidavits in favor of the party seeking jurisdiction. *Id.* However, the Court need not accept "merely conclcusory" allegations as true. *Central Freight Lines, Inc. v. APA Transp. Corp.*, 322 F.3d 376, 380 (5th Cir. 2003).

**B. The Standard for Exercising Personal Jurisdiction**

A federal court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if: (1) the state long-arm statute permits an exercise of jurisdiction, and (2) an exercise of jurisdiction would comport with the requirements of the Due Process Clause of the Fourteenth Amendment. *Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 373 (5th Cir. 2003), *cert. denied*, 540 U.S. 1111 (2004); *see also* FED. R. CIV. P. 4(e)(1), 4(h)(1), 4(k)(1). Because the requirements of Texas's long-arm statute are coextensive with the requirements of the Due Process Clause, the sole inquiry is whether the district court's exercise of personal jurisdiction over the defendants would be consistent with due process. *Religious Tech Ctr*., 339 F.3d at 373.

The exercise of jurisdiction over a nonresident defendant is proper, under the Due Process Clause, when two requirements have been met: (1) the defendant has established sufficient

---

[3]If the court does conduct an evidentiary hearing, the plaintiff has the burden to prove its grounds for personal jurisdiction by a preponderance of the evidence. *Metropolitan Life Ins. v. Robertson-Ceco Corp*., 84 F.3d 560, 567 (2nd Cir.), *cert. denied*, 519 U.S. 1006 (1996). However, if the court holds a hearing for argument only, as in this case, the plaintiff must meet only the *prima facie* test. *Rano v. Sipa Press, Inc.,* 987 F.2d 580, 587 n. 3 (9th Cir. 1993).

"minimum contacts" with the forum state, and (2) exercising jurisdiction does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 214-15 (5th Cir. 2000). A defendant has minimum contacts with a forum if it has "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). The minimum contacts requirement ensures that "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). As the Supreme Court has reasoned, the "purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or the unilateral activity of another party or a third person." *Burger King, Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (internal citations and quotations omitted). "Jurisdiction, however, is proper where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Id.* (emphasis in original).

The minimum contacts requirement may further be subdivided into contacts that give rise to *specific* personal jurisdiction and those that give rise to *general* personal jurisdiction. *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir.), *cert. denied*, 513 U.S. 930 (1994). A court may exercise *specific* personal jurisdiction over a defendant if the suit arises out of or is related to the defendant's purposeful contacts with the forum. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8 (1984); *Alpine View Co.*, 205 F.3d at 215. By contrast, if a suit is unrelated to the defendant's activities in the forum, a court may exercise *general* personal jurisdiction over the defendant if the defendant's contacts with the forum state are substantial and "continuous and

systematic." *Helicopteros*, 466 U.S. at 414-15; *Alpine View Co.*, 205 F.3d at 215. If a nonresident defendant has sufficient related or unrelated minimum contacts with the forum, then the Court must consider whether the "fairness" prong of the jurisdictional inquiry is satisfied. *Wilson*, 20 F.3d at 647. The fairness of requiring a nonresident to defend a suit in a distant forum is a function of several factors, including the "interests of the forum State." *Id*.

**C. Does the Court have personal jurisdiction over BBG?**

It is undisputed that BBG has not had substantial and "continuous and systematic" contacts with the state of Texas. BBG is a Mississippi corporation which conducts its business within the state of Mississippi. BBG has not conducted any business in Texas and does not own any business interests in Texas. Accordingly, the Court does not have *general* jurisdiction over BBG. Thus, the Court must determine whether it has *specific* jurisdiction over BBG, *i.e.*, whether the suit arises out of or is related to BBG's purposeful contacts with Texas.

As noted, a court may exercise *specific* personal jurisdiction over a defendant when: (1) the defendant purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there, and (2) the controversy arises out of or is related to the defendants contacts with the forum state. *Helicopteros Nacionales de Colombia*, 466 U.S. at 414 n. 8; *Freudensprung v. Offshore Technical Services, Inc.*, 379 F.3d 327, 343 (5th Cir. 2004). Courts are required to examine the relationship between the defendants, the forum state, and the litigation to determine "whether the defendant[s] purposefully established 'minimum contacts' in the forum state" so that it was foreseeable "that the defendant['s] conduct and connection with the forum state are such that [they] should reasonably anticipate being haled into court there." *Burger King*, 471 U.S. at 474 (quoting *World-Wide Volkswagen*, 444 U.S. at 297).

BBG contends that it has not had any purposeful contacts with the state of Texas. Although BBG admits that it entered into the Redemption Agreement with AFF, a Texas corporation, and sent AFF dividend checks to AFF at its offices in Texas after the Agreement was executed, BBG contends that it did not have sufficient contacts with Texas during the negotiation and execution of the Redemption Agreement to establish personal jurisdiction over it. BBG emphasizes that it had no relationship with AFF until KPMG approached BBG at its offices in Jackson, Mississippi and persuaded BBG to enter into the instant SC2 tax strategy. BBG further points out that KPMG was responsible for finding the tax-exempt entity to participate in the SC2 transaction with BBG, which just happened to be AFF, an entity with no prior relationship with BBG. BBG further notes that KPMG coordinated all aspects of the planning and implementation of the SC2 tax strategy and was responsible for negotiating and having the Redemption Agreement executed. At no time during the events leading up to the closing of the Redemption Agreement did BBG ever travel to Texas or meet with, speak to, or engage directly in any negotiations with AFF. Furthermore, KPMG drew up and provided BBG with all of the necessary documents to execute the Redemption Agreement, all of which were signed by BBG in Jackson, Mississippi. Thus, BBG argues that it could not have purposefully availed itself to the benefits and protections of Texas law by simply entering into a contract with a Texas resident.

Although AFF does not dispute that BBG did not have numerous contacts with Texas during the execution of this Agreement, it nevertheless argues that the Court has personal jurisdiction over BBG through the acts of BBG's agent, KPMG. AFF argues that KPMG was acting as BBG's agent in negotiating and executing the Agreement in this case, and that KPMG's contacts with Texas can be attributed to BBG for the purposes of establishing personal jurisdiction. In support of this theory,

AFF points out that before ever presenting the instant SC2 tax strategy to BBG, KPMG had provided tax, accounting, and other services to BBG and its shareholders for a number of years. AFF further argues that KPMG coordinated all aspects of the planning and implementation of the SC2 tax strategy on behalf of BBG, and was responsible for negotiating and executing the Redemption Agreement on behalf of BBG. Thus, AFF argues that KPMG was acting as BBG's agent in this case. Because KPMG was acting as BBG's agent, goes AFF's argument, KPMG's contacts with Texas, including traveling to Texas, making numerous telephone calls to Texas, and mailing the Agreement to AFF's offices in Texas, can be attributed to BBG for the purposes of establishing personal jurisdiction over BBG.

While AFF is correct that the actions of an agent may be attributed to the principal for the purposes of personal jurisdiction, *Daynard v. Ness, Motley, Loadholt, Richardson & Poole,* 290 F.3d 42, 55 (5th Cir.), *cert. denied*, 537 U.S. 1029 (2002), it is unclear whether KPMG was truly acting as BBG's agent in this case. In fact, an argument could be made that KPMG was also acting as AFF's agent in this case. It is undisputed that before entering into the Redemption Agreement with BBG, AFF had entered into two previous redemption agreements (with different S corporations), both of which were arranged by KPMG. *See* Exhibit A to Defendant's Reply. AFF would have profited from both of these transactions. Although AFF points out that KPMG coordinated all aspects of the planning and implementation of the SC2 transaction on behalf of BBG, KPMG also coordinated all aspects of the planning and implementation of the SC2 transaction *on behalf of AFF*. Thus, an argument could be made that KPMG was acting as AFF's agent in this case.[4]

---

[4]The most likely scenario is that KPMG was not acting on behalf of KPMG nor BBG but on behalf of itself in arranging such tax schemes, with the expectation of receiving a financial benefit from arranging such agreements.

Even assuming that KPMG was acting as BBG's agent in this case, KPMG's contacts with Texas were insufficient to establish personal jurisdiction over BBG. AFF relies on the following contacts KPMG made with Texas in connection with executing the Redemption Agreement in this case: (1) Doug Duncan, a KPMG employee working out of KPMG's offices in Los Angeles, California, made the initial telephone call to AFF at its offices in Austin, Texas to propose the SC2 tax strategy; (2) Mr. Duncan traveled to Austin, Texas, to meet with AFF representatives to discuss the proposed Redemption Agreement; (3) Mr. Duncan made numerous other telephone calls to AFF's offices in Austin, Texas; and (4) Mr. Duncan mailed the Redemption Agreement to AFF's offices in Austin, Texas. In addition to KPMG's contacts with Texas, AFF also emphasizes that BBG mailed dividend checks and stock certificates to AFF at its offices in Austin, Texas, and faxed a valuation of stock shares to AFF at its offices in Austin, Texas. All these contacts, however, revolve around the mere fortuity that BBG entered into a contract with an entity who happens to be a Texas resident. It is well established that "merely contracting with a resident of the forum state is insufficient to subject the nonresident to the forum's jurisdiction." *Holt Oil & Gas Corp. v. Harvey*, 801 F.3d 773, 778 (5th Cir. 1986), *cert. denied*, 481 U.S. 1015 (1987). The Fifth Circuit has repeatedly held that the combination of mailing payments to the forum state, engaging in communications related to the execution and performance of the contract, and the existence of a contract between the nonresident defendant and a resident of the forum are insufficient to establish the minimum contacts necessary to support the exercise of specific personal jurisdiction over the nonresident defendant. *Freudensprung*, 379 F.3d at 344.[5] Thus, the fact that BBG negotiated with

---

[5]*See, e.g., id.* (holding that fact that defendant contacted with Texas based company, communicated with company concerning the development and execution of the contract, and wired money to the company in Texas did not indicate that it intended to avail itself to the privilege of

and contracted with a Texas entity and mailed payments to Texas does not show that BBG intended to avail itself of the privilege of doing business in Texas. Even the fact that an employee of KPMG traveled to Texas from California to finalize the contract does not show that BBG purposefully availed itself of the benefits and protections of Texas law. *See Hydrokinetics,* 700 F.2d at 1028-29 (holding that fact that defendant traveled to Texas to close the deal was insufficient to confer personal jurisdiction over defendant where other factors – such as sole contact with Texas was contract with Texas resident – showed that defendant did not purposefully avail itself of the benefits and protections of Texas law). As was the case in *Hydrokinetics,* BBG's sole contact with the state of Texas is the single, isolated transaction of entering into the Redemption Agreement in this case. Moreover, the Redemption Agreement was initiated and negotiated by KPMG, who contacted BBG at its offices in Mississippi.

The significance of BBG and KPMG's contacts with Texas is further diminished by the wording of the Redemption Agreement itself. The Agreement specifically states that it was executed in Mississippi and that it is subject to the laws of Mississippi (the Mississippi Business Corporation

---

doing business in Texas); *Holt Oil*, 801 F.2d at 778 (finding no specific jurisdiction over nonresident defendant where nonresident defendant entered into a contract with a Texas resident, sent an agreement and checks to Texas, and engaged in extensive telephonic and written communication with the plaintiff in Texas); *Stuart v. Spademan*, 772 F.2d 1185, 1192-94 (5th Cir. 1985) (finding no indication that the nonresident defendant intended to avail himself of the privilege of doing business in Texas and hence no specific jurisdiction where nonresident defendant contracted with Texas residents, directed letters and phone calls to Texas, shipped prototypes and products to Texas, negotiated a contract with plaintiffs that was to be governed by Texas law, and marketed his product in Texas); *Hydrokinetics, Inc. v. Alaska Mechanical, Inc.*, 700 F.2d 1026, 1029 (5th Cir.) (holding that nonresident defendant did not purposefully avail itself of the privilege of conducting business with Texas or invoking the benefits and protections of Texas law by simply entering into "an isolated transaction [contract]" that was formalized in Texas where several other factors including choice of law provision weighed against a finding of personal jurisdiction), *cert. denied*, 466 U.S. 962 (1984).

Act), not the laws of Texas. Agreement at ¶ 1 & 7, Exhibit B to Defendant's Response. The Agreement further provides that BBG would perform the material terms of the contract in Mississippi, not in Texas. Finally, the Court again notes that BBG itself negotiated and executed the contract in Mississippi, not Texas. Other than sending two checks to AFF in Texas, BBG made no purposeful contacts with the state. *See C & H Transportation Co. v. Jensen & Reynolds Construction Co.*, 719 F.2d 1267, 1270 (5th Cir.1983), *cert. denied*, 466 U.S. 945 (1984) (fact that payment mailed to Texas is hardly significant in terms of purposeful availment); *Hydrokinetics*, 700 F.2d at 1029 (nor do we weigh heavily the mailing of payment checks into the forum). It is clear that BBG's contact with Texas rests on nothing but "the mere fortuity" that AFF happened to be a Texas resident. "The purposeful availment of the privilege of conducting activities within the forum state required by the due process clause, cannot be inferred from such a 'mere fortuity.'" *Patterson v. Dietze, Inc.*, 764 F.2d 1145, 1147 (5th Cir. 1985) (quoting *Product Promotions, Inc. v. Cousteau*, 495 F.2d 483, 496 (5th Cir. 1974)).

Based upon the foregoing, the Court finds that BBG and KPMG's contacts with Texas did not demonstrate that BBG purposefully availed itself of the privilege of conducting business in Texas or that it invoked the benefits and protections of Texas law. Accordingly, the Court finds that it lacks personal jurisdiction over BBG and its Motion to Dismiss should be granted.[6]

---

[6]Because the Court has found that AFF has failed to establish that BBG has had the requisite "minimum contacts" with Texas, the Court is not required to address the second prong of the inquiry. *See Colwell Realty Investments v. Triple T Inns*, 785 F.2d 1330, 1335 (5th Cir. 1986); *Stuart*, 772 F.2d at 1191-92.

## III. RECOMMENDATION

The Court **RECOMMENDS** that the District Court **GRANT IN PART AND DENY IN PART** Defendant Brown Bottling Group, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction, Motion for Stay of Litigation, or, in the alternative, Motion to Transfer (Clerk's Docket No. 10). The Court **RECOMMENDS** that the District Court **GRANT** Defendant Brown Bottling Group, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction, and **DISMISS** this suit for lack of personal jurisdiction. The Court further **RECOMMENDS** that the District Court **DENY AS MOOT** Defendant's Motion for Stay of Litigation, or, in the alternative, Motion to Transfer.

## IV. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *Battles v. United States Parole Comm'n,* 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within ten (10) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-153, 106 S.Ct. 466, 472-74 (1985); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this the 20th day of September, 2006.

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE